**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHARLES GHALIB<br>317 Vernon Avenue<br>Williamsport, PA 17701<br><br>             Plaintiff,<br><br>v.<br><br>LYCOMING COLLEGE<br>One College Place<br>Williamsport, PA 17701<br><br>             Defendant. | CIVIL ACTION<br><br>CASE NO.:<br><br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.     This action has been initiated by Charles Ghalib (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Lycoming College ("Defendant College," unless indicated otherwise) for violations of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981). The crux of Plaintiff's allegations in this lawsuit are premised upon (in the employment and contractor context) him being reassigned, receiving less hours and pay, and ultimately being terminated. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this District because actions underlying this case occurred in this District and Defendant is deemed to reside where it is subject to personal jurisdiction.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult female residing at the above-captioned address.

7. Lycoming College (hereinafter, "Defendant College") is a private, 4-year college located in Williamsport, Pennsylvania. Defendant College offers students four-year liberal arts and science undergraduate degrees (and is an educational institution).

8. At all times relevant herein, Defendant College acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff race, ethnic characteristics, and ancestry are properly characterized in the following ways (as Plaintiff is a protected individual under 42 U.S.C. § 1981):

2

(a) He is Lebanese;[1]

(b) He is Middle Eastern (and identifies as non-white);[2] and

(c) He is of Arab ethnicity (as Lebanon is an Arab country).[3]

11.   Choice Carpet Cleaners, Inc. (hereinafter, "CCC") is a domestic business corporation incorporated in Pennsylvania. CCC provides cleaning and janitorial services, often on a contractual basis with third-party entities (such as in this case, to Lycoming College).

12.   Plaintiff was hired by, directly employed by, and paid by and through CCC. Defendant CCC functions similar to that of a staffing company (but focusing on janitorial personnel).

13.   Hiring of Plaintiff by CCC occurred in or about early February of 2024; and in total, Plaintiff was employed by CCC for approximately six (6) months (until termination in or about July of 2024).

14.   CCC contracted with third parties to provide an array of cleaning, janitorial, and other related services. One such third party was Defendant College.

---

[1] *See e.g. Shebley v. United Cont'l Holdings, Inc.*, 357 F. Supp. 3d 684, 692 (N.D. Ill. 2019)(explaining someone who is "Lebanese-American" sufficiently states a "racial discrimination" claim under § 1981); *Amro v. Boeing Co.*, 65 F. Supp. 2d 1170, 1186 (D. Kan. 1999)(explaining being Lebanese is protected under §1981, but dismissing case on summary judgment for lack of evidence of discrimination).

[2] Any argument by a defendant that "Arab" or "Middle Eastern" descent is not protected under § 1981 would run "headlong into contrary [Third Circuit and] Supreme Court precedent." *Mahmoud Sayed-Aly v. Tommy Gun, Inc.*, 170 F. Supp. 3d 771, 777 (E.D. Pa. 2016); *See also Amini v. Oberlin College*, 259 F.3d 493, 503 (6th Cir. 2001)(reversing district court and explaining the Supreme Court has already established that those of "Middle East" descent comprise a race, not just a place of origin).

[3] The Supreme Court has explained that discrimination against and someone for being Arab is protected under 42 U.S.C. § 1981. *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613, 107 S. Ct. 2022, 2028 (1987); *see also Al-Khazraji v. St. Francis College*, 784 F.2d 505, 514 (3rd Cir. 1986)(reversing district court explaining Arabs are protected under § 1981).

15. After hire by CCC (and having assisted with some other accounts pre-Defendant College), Plaintiff was placed to work within Defendant College (wherein he performed janitorial services as a laborer). While at Defendant College, Plaintiff received close to full-time hours.

16. While performing work on the premises of Defendant College, Plaintiff was supervised by management of CCC <u>and</u> Defendant College.

17. Tim Montgomery ("Montgomery") is upon information and belief a shareholder, executive, and high-level manager of CCC. Montgomery was Plaintiff's supervisor *from a standpoint of* staffing, payroll, and placement within Defendant College. He, however, did not manage, direct, or oversee Plaintiff's work therein.

18. While working as a cleaner within Defendant College, Plaintiff was supervised by a facilities supervisor named "Denny." Plaintiff is unaware of this individual's last name (and presumes "Denny" is short for Dennis). Denny, however, was a direct employee of Defendant College. And Denny oversaw and directed Plaintiff as if a functional employee of Defendant College (while Plaintiff performed work alongside direct employees of Defendant College performing his same role).

19. Defendant College utilized contract laborers such as CCC *to supplement* their existing staff. One direct employee of Defendant College who worked in the same vicinity of Plaintiff was named Deborah (a/k/a "Deb"). Plaintiff is unaware of this individual's last name, but she performed the same role as Plaintiff (only she was a direct employee of Defendant College unlike Plaintiff).[4] Deborah is a Caucasian female.

---

[4] Plaintiff anticipates obtaining the full names of "Denny" and "Deborah" during discovery.

20. During the spring of 2024, Plaintiff was assigned to work in the same building as Deborah (overlapping by several months). Plaintiff had to clean certain areas, while Deborah was responsible for cleaning other areas.

21. Plaintiff formed the opinion that Deborah was <u>very</u> racially discriminatory. In several different conversations (primarily throughout April of 2024 and early May of 2024), the following types of communication(s) occurred:

   a) Deborah asked Plaintiff was his last name was, to which Plaintiff responded "Ghalib." She asked Plaintiff "what ethnicity" are you, to which Plaintiff responded he was "Lebanese" and "Middle Eastern." She was questioning Plaintiff on how to pronounce his last name, and she was visibly annoyed and making some negative comments thereafter.

   b) Deborah made at least three (3) negative comments that she doesn't like so many "foreigners" at this school (a clear reference to Plaintiff or those with Plaintiff's ancestry).

   c) Deborah commented people like Plaintiff should not be taking up available jobs at Defendant College. Plaintiff interpreted this comment to mean Deborah had a preference for a non-Middle Eastern employees to work at Defendant College.

   d) Deborah was rude and at times in Plaintiff's presence mumbled comments about Plaintiff's "kind." She also made other offensive comments under her breath or aloud.

22. Plaintiff just wanted to work and make a living, and Plaintiff had tolerated Deborah's inappropriate commentary for over a month in the spring of 2024.

23. However, Plaintiff could not just tolerate Deborah's discriminatory actions, comments, or gestures any longer when it appeared she was trying to get him terminated from his job under false pretenses (or at least make him viewed negatively by other management).

24. By early May of 2024, Deborah had inadvertently copied Plaintiff on text messages that were really upsetting to Plaintiff such as referring to him as trash or scum, claiming he was probably trying to drink from Deborah's thermos, or that he wasn't good at his job (by not cleaning

5

in his designated areas). Such text messages were apparently directed by Deborah to Denny, but had accidentally been copied to Plaintiff.

25. Deborah did not supervise Plaintiff, she didn't evaluate or inspect Plaintiff's work, and Deborah had no responsibilities in the designated areas where Plaintiff worked. For her to impugn Plaintiff so badly, Plaintiff could only presume (as would anyone) that because of her discriminatory views - - she was attempting to cast Plaintiff in a negative light or get him terminated.

26. Plaintiff point-blank complained of "racial" discrimination to Denny and complained that Deborah had a problem with him for being "Middle Eastern." Plaintiff complained about this to Denny *in several different iterations over several days* in or about early May of 2024. In fact, Plaintiff thereafter continued to follow up with Denny for a meeting on a resolution who was promising Plaintiff he would discuss how to handle the matter with his own manager (Dave, whose last name is unknown but who was a manager of Denny and employee of Defendant College).

27. Upon information and belief, no meaningful action was undertaken about, towards or concerning Deborah. Instead, Plaintiff suffered the following actions between late May of 2024 through July of 2025 (hereinafter, the "adverse actions"):

    1) Plaintiff was removed from the building he was assigned with Deborah;

    2) Plaintiff was converted to a floater (being given random assignments in different areas of Defendant College;

    3) Plaintiff's schedule and hours of work were ***drastically reduced***, such that he was getting very limited shifts or hours per week (and having much less income);

    4) By July 15, 2024, Plaintiff was informed he was being terminated and/or that his employment was ending; and

    5) Plaintiff was not given alternative assignments by CCC.

28. Plaintiff suffered the aforesaid adverse actions by Defendant College management because of his race and/or due to complaints of racial discrimination (statutorily protected activity).

29. Upon experiencing the aforesaid adverse actions, Plaintiff was only being told by Montgomery that it was Defendant College's decision each time. And when Plaintiff was terminated, Plaintiff was told by Montgomery that Defendant College decided to no longer use Plaintiff.

30. Defendant College is liable because: (a) § 1981 prohibits racial discrimination or retaliation against employees or against contractors; (b) Defendant College would properly be considered a joint employer of Plaintiff (in an employment context); and (c) decision making on adverse actions taken against Plaintiff were made by Defendant College.

## Count I
## Violations of 42 U.S.C. § 1981
### (Discrimination & Retaliation)

31. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32. Plaintiff engaged in protected activity under § 1981 by complaining of what he reasonably perceived to be racial, ethnic and/or ancestral discrimination.

33. The adverse actions (outlined in this lawsuit) were taken against Plaintiff because of his race and/or complaints of racial discrimination and constitute violations of 42 U.S.C. § 1981.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, notice-pay, benefits, training, promotions, reinstatement, and seniority;

B.  Plaintiff is to be awarded punitive damages, as permitted by applicable laws herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C.  Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.  Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E.  Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
8 Interplex Drive, Suite 210
Trevose, PA 19053
(215) 639-0801

Dated: March 12, 2025